```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ALEXANDRA SILVA KEANE,              :
                                    :
               Plaintiff,           :   05 Civ. 1158 (MBM)
                                    :
    -against-                       :   OPINION AND ORDER
                                    :
MICHAEL CHERTOFF, Secretary,        :
Department of Homeland Security,    :
and MARY ANN GANTNER, District      :
Director Bureau of Citizenship and  :
Immigration Services,               :
                                    :
               Defendants.          :
-----------------------------------X
```

APPEARANCES

THEODORE COX, ESQ.
(Attorney for plaintiff)
401 Broadway
Suite 1802
New York, NY 10013
(212) 925-1208

MICHAEL J. GARCIA, ESQ.
United States Attorney for the
Southern District of New York
F. JAMES LOPREST, JR., ESQ.
Special Assistant United States Attorney
(Attorneys for defendants)
86 Chambers Street, Room 410
New York, NY 10007
(212) 637-2728

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiff Alexandra Silva Keane sues Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"), and Mary Ann Gantner, District Director of the New York District of the Bureau of Citizenship and Immigration Services ("BCIS"), seeking an order directing the BCIS to (1) rescind a decision denying plaintiff's application for adjustment of status to permanent resident, and (2) reschedule an interview for adjustment of status. Plaintiff also requests attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (2000). Plaintiff moves for summary judgment pursuant to Fed. R. Civ. P. 56. Defendants cross-move to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or, in the alternative, for summary judgment. For the following reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

I.

The following facts are taken from the Complaint, unless otherwise noted. They are assumed true only for the purpose of deciding defendants' motion to dismiss for lack of subject matter jurisdiction.

Plaintiff is a national of Ecuador who married a U.S. citizen on August 20, 2000. (Compl. ¶ 5) She filed an

application dated September 9, 2000, seeking adjustment of her immigration status to permanent resident. (Id. ¶ 6) Plaintiff and her husband were interviewed on August 16, 2001, but her application was never adjudicated. (Id. ¶ 7-8) Another interview was scheduled for March 16, 2004. (Id. ¶ 8) Plaintiff went to the interview as directed, but told a clerk at the window that her husband was not available that day. (Id.) The clerk told plaintiff not to worry, that she would receive a notice rescheduling the interview. (Id.) Plaintiff's interview was never rescheduled; rather, her application was deemed abandoned for failure to appear and thus denied. (Id. ¶ 9, Ex. 5)

II.

Plaintiff's Complaint does not contain an explicit statement providing the statutory basis for this court's jurisdiction. However, plaintiff does assert that "[t]his is an action for mandamus, brought pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 1361, and under the Administrative Procedure Act, 5 U.S.C § 701 et seq., to require the defendant to reschedule an interview appointment for plaintiff['s] application for adjustment of status." (Compl. ¶ 4) Giving plaintiff the benefit of the doubt, this sentence is the "short and plain statement of the grounds upon which the court's jurisdiction depends" required by Fed. R. Civ. P. 8(a)(1). However, for the

reasons explained below, none of the three statutes plaintiff cites gives this court subject matter jurisdiction over plaintiff's case.

A. 28 U.S.C. § 2201

Over a half century ago, the Supreme Court held that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not itself confer subject matter jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Fleet Bank Nat'l Ass'n v. Burke, 160 F.3d 883, 886 (2d Cir. 1998).

B. 28 U.S.C. § 1361

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984); accord Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989). The action that the plaintiff seeks to compel must be "subject to positive command, plainly described, and free from doubt." Fifth Avenue Peace Parade Comm.

3

v. Hoover, 327 F. Supp. 238, 242 (S.D.N.Y. 1971). As explained below, the alleged duties owed by the BCIS to plaintiff are not "plainly defined and peremptory," Anderson, 881 F.2d at 5, and, therefore, the Mandamus Act does not confer jurisdiction upon this court.

Section 245 of the Immigration and Nationality Act ("INA"), as amended, provides that the decision to adjust an alien's status to lawful permanent resident lies solely within the discretion of the Attorney General and "under such regulations as he may prescribe." 8 U.S.C. § 1255(a). Plaintiff cites Yu v. Brown, 36 F. Supp. 2d 922 (D.N.M. 1999), for the proposition that this overarching discretion does not relieve an agency from mandatory duties that arise under regulations related to the exercise of the broader discretionary power. See id. at 931 (citing, inter alia, Forest Guardians v. Babbitt, 164 F.3d 1261, 1269 (10th Cir. 1998); Atlantic & Gulf Stevedores, Inc. v. Donovan, 274 F.2d 794, 798 (5th Cir. 1960); and Mastrapasqua v. Shaughnessy, 180 F.2d 999, 1002 (2d Cir. 1950)). Although one may accept the general principle that mandamus jurisdiction might exist in circumstances where a clearly defined, peremptory duty related to the processing of adjustment of status applications arises outside the four corners of 8 U.S.C. § 1255(a), plaintiff has not shown this court any source for such a duty -- statutory or regulatory.

4

Plaintiff maintains that the BCIS's "non-discretionary duty to process all immigration applications" allows this court to exercise mandamus jurisdiction. (Pl. Mem. of Law, 4) As proof of this duty, she cites <u>Wan Shih Hsieh</u> v. <u>Kiley</u>, 569 F.2d 1179, 1182 (2d Cir. 1978), and <u>Rahman</u> v. <u>McElroy</u>, 884 F. Supp. 782, 787 (S.D.N.Y. 1995). Neither of these cases establishes a general "duty to process all immigration applications," much less a duty on the part of BCIS to provide the particular relief that plaintiff seeks in her Complaint.

In <u>Hsieh</u>, the Second Circuit held that the Immigration and Naturalization Service (predecessor to the BCIS) "is under no duty to conduct an investigation for the purpose of determining whether visas should be issued to aliens in foreign countries by the State Department pursuant to . . . 8 U.S.C. § 1104." <u>Hsieh</u>, 569 F.2d at 1182. In dictum, the Court noted that the "sole duty of the INS in this context was to determine whether appellant's petition for preference status for her children . . . should be granted under . . . 8 U.S.C. § 1153(a)(2)." <u>Id.</u> The Court then cited specific regulations implemented under the statute. <u>Id.</u> Nowhere does the Court suggest that its comment on the INS's duty to "act on preference petitions," <u>id.</u> at 1182, should be given the expansive and peremptory interpretation claimed by plaintiff.

In <u>Rahman</u>, the District Court held that the INS had no duty to schedule the interviews of applicants for lawful

5

permanent resident status "on any particular day or in any special sequence." Rahman, 884 F. Supp. at 787. In dictum unsupported by citation, the Court noted that "defendants have a clear duty to interview the plaintiffs." Id. Other courts in this district have reached the opposite conclusion, see, e.g., Zheng v. Reno, 166 F. Supp. 2d 875, 880-81 (S.D.N.Y. 2001), and the regulation governing interviews for adjustment of status, which plaintiff does not mention, shows that an interview is not compulsory, 8 C.F.R. § 245.6 (2005) (stating that although "[e]ach applicant for adjustment of status . . . shall be interviewed by an immigration officer," the "interview may be waived . . . when it is determined by the [BCIS] that an interview is unnecessary"). Given that the basis for Rahman's limited comment about the duty to interview is in question, any reading that would transform that dictum into a declaration of a general duty to process immigration applications is entirely unsupportable.

Even if one were to accept that there exists some clearly described, peremptory duty to process immigration applications, plaintiff's case does implicate that duty. The BCIS has not left plaintiff in bureaucratic limbo. It has acted on plaintiff's application and informed her of that action. (Compl. ¶ 9)

Of greater relevance is plaintiff's contention that the

form notifying applicants of their adjustment of status interviews creates a duty to reschedule those interviews. However, it is difficult to discern any clearly described, mandatory duty to this effect in the wording on the form, which states: "It is important that you keep this appointment and bring your letter with you. If you are unable to do so, state your reason, sign below and return this letter." (Compl., Ex. 3) Nothing in that wording guarantees an applicant that the BCIS will agree to reschedule an interview, whether the applicant mails in an explanation or shows up at the time and place of the interview. The general DHS regulation governing rescheduling of interviews, which again plaintiff does not mention, confirms that the BCIS has no mandatory duty to reschedule. See 8 C.F.R. § 103.2(b)(9)(I) ("The individual to be . . . interviewed may, for good cause, request that the . . . interview be rescheduled . . . . ).

Unable to cite a source for a clear nondiscretionary duty owed by the BCIS to plaintiff, plaintiff argues that "the INA statute, and corresponding regulations clearly provide for the fair processing of adjustment of status applications." (Pl. Opp'n Mem. of Law (Pl. Opp'n Mem.), 5) She contends further that because she alleges an "overt act of verbal misfeasance," madamus jurisdiction is appropriate to rectify this "abuse." (Id.) In essence, plaintiff seems to be arguing that mandamus jurisdiction

7

should exist whenever a plaintiff asserts equitable estoppel against the Government. See City of N.Y. v. Shalala, 34 F.3d 1161, 1168 (2d Cir. 1994) (holding that application of estoppel to the Government requires that the plaintiff establish both misrepresentation and "affirmative misconduct" by the Government). However, such an interpretation of the Mandamus Act confuses the existence of a nondiscretionary duty with a judicial determination that a government employee has committed some misdeed and now owes plaintiff a legal obligation. Cf. Associated Fin. Corp. v. Kemp, 769 F. Supp. 398, 401 (D.D.C. 1991) ("Absent a statutory or regulatory mandate, there is no clear ministerial mandate in this context.").

The "similar cases" plaintiff cites, where courts have "found mandamus jurisdiction for plaintiffs invoking an officer of immigration agencies to perform a nondiscretionary duty," are not in fact similar. (Pl. Opp'n Mem, 5) In Pierre v. McElroy, 200 F. Supp. 2d 251 (S.D.N.Y. 2001), the Court found that specific legislation placed a duty on the INS to investigate and adjudicate certain petitions for special immigrant juvenile status. See id. at 252-53. As mentioned above, plaintiff provides no statutory ground requiring the BCIS to rescind its denial and reschedule her interview. Jefrey v. INS, 710 F. Supp. 486 (S.D.N.Y. 1989) is even less relevant. In that case, the Court did not rule on mandamus jurisdiction. In determining that

8

the plaintiff was entitled to attorney's fees under the Equal Access to Justice Act following discontinuance of an action in the nature of mandamus, the Court held simply that the Government's failure to file any answer to the complaint was not reasonable. Id. at 488-89.

Because plaintiff's Complaint does not engage a clear nondiscretionary duty, the Mandamus Act does not confer subject matter jurisdiction on this court.

C. The Administrative Procedure Act

The Supreme Court has held that the provisions of the the Administrative Procedure Act ("APA") allowing courts to review agency actions, 5 U.S.C § 701 et seq., do "not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." Califano v. Sanders, 430 U.S. 99, 107 (1977); accord Hsieh, 569 F.2d at 1182. However, "it is common ground that if review is proper under the APA, the District Court [has] jurisdiction under 28 U.S.C. § 1331," the general federal question statute. Bowen v. Mass., 487 U.S. 879, 891 n.16 (1988).

As defendants point out (Def. Mem of Law, 16), the APA does not apply to "agency action . . . committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and the plain language of the INA labels adjustment of status a discretionary act, 8

9

U.S.C. § 1255(a).  Plaintiff ignores this argument altogether (see Pl. Opp'n Mem, 6-7) and does not cite a single statutory or regulatory limitation on the BCIS's authority that might serve as a "meaningful standard against which to judge the agency's exercise of discretion."  Lincoln v. Vigil, 508 U.S. 182, 191 (1993) (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)) (internal quotation mark omitted).  Indeed, plaintiff states plainly that she "does not seek a direct review of her adjustment of status application"; rather, she "would like to ascertain what the BCIS'[s] policy is [regarding notification of the postponement of adjustment of status interviews], and whether it falls within the scope of both the INA and federal regulations." (Pl. Opp'n Mem., 7)  This statement appears to construe judicial review under the APA as a discovery mechanism that will allow plaintiff to inform this court at some later point in time of the legal standards at issue in her case.  But this court must have the statutory or regulatory measuring stick in hand before the APA applies.  Because plaintiff has not identified any provision that constrains the BCIS's discretion with respect to a decision that an adjustment of status application has been abandoned, federal question jurisdiction does not exist.

*        *        *

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

SO ORDERED:

Dated: New York, New York
      March 13, 2006

Michael B. Mukasey
U.S. District Judge